MANUFACTURERS INSURANCE AGENCY CO. AND AFFILIATED COMPANIES, MICHIGAN UNDERWRITERS CORPORATION, AND MANUFACTURERS UNDERWRITING CO., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4135. Promulgated September 12, 1927.

A corporation, 99.86 per cent of the stock of which is owned by another corporation, *held* not entitled to classification as a personal service corporation.

*John T. Kennedy, Esq.,* and *Richard H. Wolfe, C. P. A.,* for the petitioners.

*J. Arthur Adams, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income tax of $2,486.84 for the year 1920 resulting from the respondent's refusal to grant the petitioner personal service classification.

### FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of Michigan, with its principal office at Detroit. It was incorporated in July, 1914, with an authorized capital stock of $30,000, divided into 3,000 shares of a par value of $10 each, all of which was outstanding during 1920. Throughout 1920, the petitioner was engaged in operating a general insurance agency on a commission basis.

About November, 1918, the Michigan Underwriters Corporation was organized with a capital stock of $10,000, divided into 1,000 shares of a par value of $10 each, all of which was outstanding during 1920. This corporation was engaged in the business of acting as attorney in fact for the Michigan Reciprocal Exchange, which was a Michigan association for the exchange of indemnity in workmen's compensation insurance.

In December, 1919, the Manufacturers Underwriting Co. was organized under the laws of Delaware for the purpose of acquiring and holding the stock of the two corporations mentioned above, and at the time of its organization acquired all the outstanding stock of these companies with the exception of four shares in each company. The four shares in each company not passing to the Manufacturers Underwriting Co. were held by four individuals who owned one share each in each of the two companies. During 1920, the Manufacturers Underwriting Co. owned 2,996 of a total of 3,000 shares of the outstanding capital stock of the Manufacturers Insurance Agency Co., and 996 shares of a total of 1,000 shares of the outstanding capital stock of the Michigan Underwriters Corporation. The Manufacturers Underwriting Co. had no other business than holding the stock and receiving the dividends of the other two corporations. For each share of stock in the Michigan Underwriters Corporation acquired by the Manufacturers Underwriting Co. it issued six shares of its preferred stock and six shares of its common stock, and for each share of stock acquired in the Manufacturers Insurance Agency Co. it issued two shares of its preferred and two shares of its common stock. The shares of stock of the Manufacturers Underwriting Co. had a par value of $10.

The stockholders of the Manufacturers Underwriting Co. during 1920 and the amount of common and preferred stock held by each were as follows:

| | Shares of stock | | | Shares of stock | |
|---|---|---|---|---|---|
| | Common | Preferred | | Common | Preferred |
| C. E. Blaesser | 60 | 60 | H. W. Holt | 20 | 20 |
| Chas. B. Bohn | 518 | 518 | W. P. Kiser | 180 | 180 |
| W. T. Bohn | 60 | 60 | Max Krell | 90 | 90 |
| C. W. Brandt | 258 | 258 | B. Krell | 80 | 80 |
| M. Birnbaum | 130 | 130 | Wm. K. Krug | 160 | 160 |
| M. L. Bradt | | 150 | Edith Lauer | 80 | 80 |
| Fred Christian | 60 | 60 | A. Manche | 90 | 90 |
| Frank Callender | 25 | 25 | W. S. McDowell | 100 | 100 |
| Wm. Christian | 60 | 60 | L. Rosenthal | 260 | 260 |
| Iretta DeMormey | 13 | 13 | Jacob Roth | 540 | 540 |
| Titus L. Denk | 60 | 60 | Waldo Sloman | 1,122 | 1,122 |
| R. K. Davis | 120 | 120 | L. C. Sherwood | 120 | 120 |
| Frank Farrington | 50 | 50 | Hal. F. Schulte | 25 | 25 |
| Harvey Fruehauf | 30 | 30 | Louis S. Smith | 25 | 25 |
| Arthur Frank | 32 | 32 | C. R. Talbot | 300 | 300 |
| Seymour Franklin | 30 | 30 | Fannie F. Feichner | | 210 |
| Florence S. Freiberg | 40 | 40 | Miriam Feichner | | 120 |
| Morris Freiberg | 520 | 520 | I. M. Weinberg | 60 | 60 |
| Sol. M. Gerson | 30 | 30 | E. J. Woodison | 518 | 518 |
| Harry S. Grant | 190 | 190 | H. A. Velick | 300 | 300 |
| L. M. Goodman | 3,774 | 3,724 | C. H. Woodison | 50 | 50 |
| M. M. Harrison | 180 | 180 | J. C. Woodison | 220 | 220 |
| Arthur Goulson | 330 | 120 | C. D. Yaline | 160 | 160 |
| T. F. Henry | 6 | 6 | Mary F. Zeller | 60 | 60 |
| C. J. Higgins | 60 | 60 | | | |
| D. A. Hinckley | 140 | 240 | Total | 12,088 | 12,088 |
| Paul E. Hinckley | 752 | 432 | | | |

The stockholders of the Manufacturers Underwriting Co. who rendered services in 1920, the duties they performed, the amount of

stock held, and the compensation received from the Manufacturers Insurance Agency Co. and the Michigan Underwriters Corporation were as follows:

| Stockholders | Duties | Stock holdings | | Compensation | |
|---|---|---|---|---|---|
| | | Common | Preferred | Manufacturers Insurance Agency Co. | Michigan Underwriters Corporation |
| Waldo Sloman | President and sales | 1,122 | 1,122 | $3,150.00 | $3,150.00 |
| L. M. Goodman | Secretary and sales | 3,774 | 3,724 | 12,499.92 | 12,499.92 |
| P. E. Hinckley | Treasurer | 752 | 432 | 1,800.00 | 3,000.00 |
| M. M. Harrison | Director and sales | 180 | 180 | 3,000.00 | 3,000.00 |
| C. W. Brandt | Director | 258 | 258 | | |
| Jacob Roth | Director | 540 | 540 | | |
| C. R. Talbot | Director | 300 | 300 | | |
| E. J. Woodison | Director | 518 | 518 | | |
| Arthur Goulson | Sales | 330 | 120 | 3,000.00 | 3,000.00 |
| D. A. Hinckley | Salesman | 140 | 240 | | |
| T. F. Henry | Claim adjuster | 6 | 6 | | |
| Iretta DeMormey | Stenographer | 13 | 13 | | |
| Total | | 7,933 | 7.453 | 23,449.92 | 24,649.92 |

Sloman, Goodman, P. E. Hinckley, and Harrison were the owners of the 4 shares of stock in each the Manufacturers Insurance Agency Co. and the Michigan Underwriters Corporation that were not owned by the Manufacturers Underwriting Co. The officers of the Manufacturers Insurance Agency Co. in 1920 were Sloman, president, Goodman, secretary, and P. E. Hinckley, treasurer. For their services in these capacities they received salaries in the amounts shown above. Goodman was secretary and treasurer and P. E. Hinckley was assistant treasurer of the Michigan Underwriters Corporation, and in those capacities they received the amounts shown above. The amounts of $3,000 and $3,000 received by Goulson and Harrison, respectively, from the Manufacturers Insurance Agency Co., and the amounts of $3,150, $3,000, and $3,000 received by Sloman, Harrison, and Goulson, respectively, from the Michigan Underwriters Corporation, were compensation for their services as salesmen.

During 1920, Sloman, Goodman, Harrison, and Goulson were regularly engaged in selling insurance. In addition to his work as salesman, Goodman was general manager of the three companies, and supervised the entire organization, devoting his entire time to the business of the three companies. Other stockholders who sold insurance, which was carried through the books under Goodman's name, were C. B. Bohn, Fruehauf, Roth, Grant, E. J. Woodison, Davis, Fred Christian, Wm. Christian, and C. W. Brandt. The duties of C. W. Brandt, a director, consisted of signing checks. Roth, E. J. Woodison, and Talbot, who were directors, performed no other duties than those of directors. While Brandt, Roth, Woodison and

Talbot all procured business, they were paid no compensation direct for that service.

Directors' meetings were held about once every two months, and the directors were paid $10 each for every meeting attended.

During 1920 the salaries paid nonstockholding salesmen for services rendered the Manufacturers Insurance Agency Co. amounted to $2,583.28, and for services rendered the Michigan Underwriters Corporation amounted to $4,220.78, or a total of $6,804.06.

In carrying on its business, the petitioner secured orders for insurance either direct or through its salesmen. It then wrote the policies, billing the insured, who was expected to remit to the petitioner in due course. In turn, the petitioner remitted to the insuring company or the insurers the amount due which was the amount of the premium on the policy, less the commission. At times, notes instead of cash were accepted as premiums. The petitioner at times borrowed money from which to make payment to the insurance companies of premiums due before it had collected the premiums from the insured. As a rule, the amount owing the petitioner was in excess of what it owed. During 1920, from 30 to 40 per cent of petitioner's business was new business, while from 60 to 70 per cent was old or renewal business. The following is a statement of the income and deductions claimed for 1920:

| | Michigan Underwriters Corporation | Manufacturers Insurance Agency Co. | Manufacturers Underwriting Co. | Total |
|---|---|---|---|---|
| **INCOME** | | | | |
| Commission earned | $40,930.78 | $51,979.62 | ------------ | $92,910.40 |
| Profit on Canadian exchange | ------------ | 448.93 | ------------ | 448.93 |
| Payable adjustments credits | ------------ | 735.36 | ------------ | 735.36 |
| Miscellaneous revenue | ------------ | 228.80 | ------------ | 228.80 |
| Interest earned | ------------ | 960.39 | $13.13 | 973.52 |
| Profit on accounts recovered | ------------ | 400.48 | ------------ | 400.48 |
| | 40,930.78 | 54,753.58 | 13.13 | 95,697.49 |
| **EXPENSES** | | | | |
| Auto and travel expense | 826.14 | 175.74 | ------------ | 1,001.88 |
| Agents' commissions | 3,114.37 | ------------ | ------------ | 3,114.37 |
| Bonus paid (office) | 131.10 | ------------ | ------------ | 131.10 |
| General expense | 817.98 | 2,836.01 | 2,004.78 | 5,658.77 |
| Interest expense | 82.53 | 1,482.37 | ------------ | 1,564.90 |
| Postage | 311.18 | 575.94 | ------------ | 887.12 |
| Office expense | 2,815.55 | 6,924.64 | ------------ | 9,740.19 |
| Officers' salaries | 15,499.92 | 17,449.92 | ------------ | 32,949.84 |
| Supplies used | 729.59 | ------------ | 25.50 | 755.09 |
| Salesmen's salaries | 13,370.78 | 8,583.28 | ------------ | 21,954.06 |
| Taxes | .50 | ------------ | ------------ | .50 |
| Telephone and telegraph | 16.99 | 1,024.97 | ------------ | 1,041.96 |
| Directors' fees | 500.00 | ------------ | ------------ | 500.00 |
| Payable adjustments, debits | ------------ | 205.43 | ------------ | 205.43 |
| Loss on accounts written off | ------------ | 5.15 | ------------ | 5.15 |
| Bad debts | ------------ | 975.10 | ------------ | 975.10 |
| Bonus paid | ------------ | 367.20 | ------------ | 367.20 |
| Legal expense | ------------ | 186.55 | ------------ | 186.55 |
| Rent and light | ------------ | 3,133.85 | ------------ | 3,133.85 |
| | 38,216.63 | 43,926.15 | 2,030.28 | 84,173.06 |
| Profit or loss | 2,714.15 | 10,827.43 | [1] 2,017.15 | 11,524.43 |

[1] Loss.

The amount of $6,924.64 claimed by petitioner as a deduction for office expense represents salaries of clerks, stenographers, and general office expense.

The balance sheets as of December 31, 1919, and December 31, 1920, are as follows:

| | Michigan Underwriters Corporation, Dec. 31, 1919 | Manufacturers Insurance Agency Co., Dec. 31, 1919 | Michigan Underwriters Corporation, Dec. 31, 1920 | Manufacturers Insurance Agency Co., Dec. 31, 1920 | Manufacturers Underwriting Co., Dec. 31, 1920 | Consolidated balance sheet, Dec. 31, 1920 |
|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | |
| Cash on hand and in banks | $68.08 | $4,707.73 | $67.44 | $522.33 | −$8.60 | $581.17 |
| Liberty bonds | | 3,200.00 | | 3,250.00 | | 3,250.00 |
| Accounts receivable | | 31,385.02 | 1,056.47 | 41,680.89 | | 42,737.36 |
| Michigan Reciprocal Association | 7,587.91 | | 3,873.38 | | | 3,873.38 |
| Notes receivable | 4,250.00 | 40,607.61 | 300.00 | 16,388.58 | | 16,688.58 |
| Subscriptions unpaid | 650.00 | | | | | |
| Organization expense | 2,899.19 | | 4,395.19 | | | 4,395.19 |
| Automobiles | | 1,833.13 | 609.29 | 2,233.13 | | 2,842.42 |
| Furniture and fixtures | | 1,506.26 | 490.50 | 1,780.53 | | 2,271.03 |
| Outside investments | | 10,764.46 | | 10,238.96 | | 10,238.96 |
| Certificate of deposit | | | | 1,000.00 | | 1,000.00 |
| Stock investment— | | | | | | |
| Manufacturers Insurance Agency | | | | | 120,000.00 | 90,000.00 |
| Michigan Underwriters Corporation | | | | | 120,000.00 | 110,000.00 |
| | 15,455.18 | 94,004.21 | 10,792.27 | 77,094.42 | 239,991.40 | 287,878.09 |
| **LIABILITIES** | | | | | | |
| Manufacturers Insurance Agency Co | 491.00 | | | | | |
| Notes payable | 1,000.00 | 27,576.89 | | 18,198.84 | | 18,198.84 |
| Accrued commissions payable | 783.06 | | 885.00 | | | 885.00 |
| Salary payable | | | 800.00 | | | 800.00 |
| Accounts payable | | 31,902.09 | | 31,042.92 | | 31,042.92 |
| Reserve for depreciation | | 1,016.12 | | 1,016.12 | | 1,016.12 |
| Dividends payable | | | 1,000.00 | | | 1,000.00 |
| Capital stock issued—common | 10,000.00 | 30,000.00 | 10,000.00 | 30,000.00 | 120,880.00 | 120,880.00 |
| Capital stock issued—preferred | | | | | 120,880.00 | 120,880.00 |
| Surplus | 3,181.12 | 3,509.11 | ¹1,892.73 | ¹3,163.46 | ¹1,768.60 | ¹6,824.79 |
| | 15,455.18 | 94,004.21 | 10,792.27 | 77,094.42 | 239,991.40 | 287,878.09 |

¹ Deficit.

Part of the amounts of notes receivable shown above represented notes accepted by the petitioner for premiums and held by it on the dates indicated. Part of the amounts shown as notes payable represented outstanding loans obtained to make payments to the insurance companies of premiums not collected from the insured.

The petitioner was not a personal service corporation during 1920.

## OPINION.

TRAMMELL: The only issue involved in this proceeding is whether during the year 1920 the petitioner was a personal service corporation. Section 200 of the Revenue Act of 1918 provides in part as follows:

The term " personal service corporation " means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stock-

holders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor * * *.

During 1920, the Manufacturers Underwriting Co., a holding company, owned 2,996 shares of the petitioner's total outstanding capital stock of 3,000 shares. The holding company, during the year here involved, had no other business than holding the stock and receiving the dividends of the petitioner corporation and the Michigan Underwriters Corporation, which acted as an attorney in fact for an association formed for the exchange of indemnity in workmen's compensation insurance. The remaining four shares of petitioner's capital stock were held by Sloman, Goodman, P. E. Hinckley and Harrison, who owned one share each, and who, with the exception of P. E. Hinckley, were regularly engaged in selling insurance. Unquestionably the holding company was the principal owner or stockholder in the petitioner corporation.

We are here confronted with the question of whether a corporation is entitled to personal service classification when substantially all of its stock is owned by another corporation. This question was considered by us in *Appeal of Hanley-Ried & Co.*, 2 B. T. A. 315. There we held that a corporation, the principal stockholder of which was another corporation, was not entitled to personal service classification. We said:

The concept underlying the whole theory of personal service corporations was to give relief to those corporations, the income of which was primarily attributable to the personal and individual activities of the principal stockholders.

We think Congress intended that the activities be personal in the sense of being individual. Without question a corporation can not be said to have individual activities. It is an artificial entity, the activities of which are necessarily vicarious and not individual.

The foregoing principles are applicable and controlling here.

In view of the foregoing, the action of the respondent in denying personal service classification is approved.

*Judgment will be entered for the respondent.*

Considered by SIEFKIN and MORRIS.